0-9-0355 George Poulos and his family travel with me to the E.N.A. Court. May I please the Court? As Justice indicated, I won't go over the briefs. I think we're talking about the jurisdictional issue here. I'll just briefly go over what I believe are the keys. Counsel, let me remind you, these are recording devices. They are not microphones. You have to compete with the rain and the traffic and the acoustics. I'll go over, Justices, what I believe are the keys indicated in the briefs and in the case law. The keys are did the defendant purposely direct activities to residents in Illinois? Did the defendant derive economic benefit from those? That's one key. Another key is what are the contacts in Illinois and activities in Illinois through which the defendant was in contact with Illinois and purposely directed activities at the residents of Illinois? Another key is the case law, which indicates that a defendant cannot avoid jurisdiction by delegating another company to conduct its activities in Illinois or conduct its contacts in Illinois. Another key is is there fair warning to the defendant under the due process clause that they may be called into court in Illinois? Another key in this particular case is the fact that the defendant in Mobiliaria, which is an accidental hotel, entered into a contract with an Illinois company, Apple Vacations West, concerning targeting Illinois residents for its own economic benefit. And under 2-209A7 of the Illinois Code, that in and of itself, that section indicates that entering into a contract that is substantially related to Illinois submits the defendant to the jurisdiction of Illinois. That in and of itself, I believe, confers jurisdiction on this defendant. And then a final key issue, I believe, is whether or not the incident, the negligence cause of action arose from the contacts in Illinois. And the case law on that, specifically the Balachi case and the Loggins case, two Illinois cases cited in the briefs, that if the activities in Illinois, if the incident lay in the wake of the activities directed at the Illinois residents, then the cause of action arises from the activities in Illinois. And they specifically indicate in those cases that if the plaintiff is enticed or makes their trip to the resort or to that defendant's premises, as a result of the activities in Illinois, then the cause of action, quote, unquote, lays in the wake of the activities and, quote, unquote, therefore arises from the activities in Illinois. Just to go over the evidence on the purposeful direction activities to the residents in Illinois. In this case, unlike, I think, almost all of the other cases cited, we have an actual contract that actually says this defendant is purposely directing activities. This defendant, along with the other accidental hotels, is purposely directing its activities to Illinois residents. And it's targeting Illinois residents, and it's actually targeting primary targets, according to the actual language of that agreement with Apple Vacations West. And Chicago is listed as a primary target of that partnership, co-op, partnership agreement with Apple Vacations West entered into by the accidental hotels. I'm still having a hard time seeing any real business practice by the defendant or the appellee in Illinois. There seems to be just minimum, if at all, context in order to, that would be required in order to give us jurisdiction over this company. So, I mean, can you explain further why you think that this court would have jurisdiction of this, not only out of state, but out of country? Sure. The court in the Mattson case specifically indicates that none of the other cases indicate otherwise that a defendant cannot avoid jurisdiction in the forum state by delegating its activities in the forum state to another company. In this case, the accidental hotels, which includes Immobiliaria, which owns this premises by its contract with Apple Vacations West, and even before that, they had Allegro Resorts Management Company that they had delegated, but that's not a written contract, delegated Apple Vacations West to do numerous things that targeted Illinois residents within the state, including, if I may go through them, it says on the cover of the agreement, the overall goal of this agreement is to form a proactive partnership with Apple Vacations West to target cities in Illinois on behalf of the accidental resorts, which includes Immobiliaria. So you're saying that because a company, two companies down the line, advertised that that is sufficient contact for us to get jurisdiction over a Mexican corporation? No, I'm not saying that. I'm saying that they did much more than just advertise, pursuant to this agreement. That's what I'm asking you. What much more? All I could see was the advertisement. No. They paid $885,000 to Apple, the accidental hotels, which includes Immobiliaria. To advertise. To advertise extensively. To also, they paid, that money was also paid for to set up training of agents by accidental in Illinois, training of the Apple West agents. Their contract also was paid for them to set up different groups. Apple agents, not Immobiliari. Right, but those agents are delegated to sell Immobiliaria and the other accidental hotel stays in Illinois, including Chicago, and trained in Illinois to do that. That's clearly more than advertising or soliciting. They also were paid for. For one moment, if you'd be so kind, would you tell me exactly what the relationship is between Immobiliaria and Occidental? Occidental Hotels is a group of hotels. Immobiliaria is one of them. That's the relationship. It's that whole group of hotels, including the hotel in Cancun. And what is the legal relationship between those two entities? The Occidental Hotels is a group of hotels owned apparently by the same company overall that has entered into this Apple Vacations West agreement to promote. So Immobiliaria, as one of those hotels, has entered into the agreement with Apple Vacations West. All those hotels are the Occidental Hotels as a group, and that agreement was signed by the Occidental Hotels, not by other Occidental Hotels, but by all the Occidental Hotels, including Immobiliaria. I mean, it's exactly what this Masson Court says is it's unfair for a defendant to say, I shouldn't have to go to Illinois and defend a case because I wasn't there. Oh, well, I hired another company to go there and do these things for me there, but because I delegated to another company, you can't have jurisdiction over me. And that's what the Masson Court says is unfair. Because if that were the case, then any out-of-state or out-of-country defendant can conduct as many activities, advertising or more activities, and there's much more, I haven't gone through the whole list here, contained in that agreement in Illinois, which are clearly enough contacts to sustain jurisdiction, but because they say, well, I hired this other company to do it, and I paid them $885,000 to do it, therefore you can't get jurisdiction over me. And that's what the Masson Court says is unfair. And there's no other case, and defendants don't cite another case that says that that's not the case law. To go on with the different contacts and the different things that they've agreed to in this agreement besides advertising, they also set up royalty programs and tour bonus programs with Apple West Vacations to give the agents in Illinois bonuses for when they book tours, and they give them the ability to book tours in the Occidental hotels, including Immobiliaria. They provide them, pursuant to the agreement, with room nights, free room nights, to provide as promotional activities. But Immobiliaria does not have a contract with Apple West. Yes, it does. It does. Immobiliaria is an Occidental hotel, and the Occidental hotel... does not have a contract that says it's between Immobiliaria and Apple West. Is that correct? I disagree. The Occidental hotel is Immobiliaria. Where is it? Cite to it. Let me see that. Where is that contract? It's right here. It says... No, no, no, no. Just reference it. Just tell me. I have your... It's on C-466 to 480. I believe it's 479. It's signed on behalf of the Occidental hotel, which includes Immobiliaria. Well, that gets back to the exact relationship between Immobiliaria and the Occidental hotels, doesn't it? It does. And the relationship is it's a group of hotels, and Immobiliaria is one of the group. Nobody has disputed that. And this hotel... But you acknowledge that they are separate entities, separate legal entities. They're separate entities. I agree. But they are together. They have signed this contract as a group. Well, what then is the nature of the umbrella, if you will, that you contain, extends over all the Occidental hotels, including Immobiliaria? I'm not sure what your justice is asking. The Occidental hotels, as a group... Correct. They paid $885,000, that includes Immobiliaria, to promote these hotels, including the hotel in Cancun where these plaintiffs went, pursuant to an Apple tour. So they created an umbrella of a group. They could have signed it each hotel, but they signed it together as a group of hotels. But it's signed, and it's paid. This money is paid. There's no dispute of this in the past. Defendant could have shown that Immobiliaria was... In fact, they admit in their brief that Immobiliaria is an Occidental hotel. And there's no disputing that the Occidental hotels, as a group, signed this contract. I mean, maybe it could be clearer, but they are a party to this contract, as every other Occidental hotel is. Is there another document between Occidental and Immobiliaria? Is there a contract between them? I don't know. I know that they've admitted that in their affidavits and in their brief, they admitted that Immobiliaria is one of the Occidental hotels, and... But there's no document referencing this connection. Other than the affidavit admitting it, there's no document. But the affidavit admits... There's no contract. What? There's no contract between Immobiliaria and Occidental, is that correct? There may be a contract, but we didn't need to pursue the contract, because they admitted in their affidavit that the Occidental hotels are owned by a parent company and all the Occidental hotels, including Immobiliaria, together signed this contract. Yeah, but Occidental does not own Immobiliaria. Only Immobiliaria owns Immobiliaria. No, Immobiliaria is owned by a parent company that owns the Occidental hotels. They admit that in their affidavit. And they admit that in their brief. I wanted to ask you, young man, in terms of the $885,000, was it ever an indication of a specific amount or any amount at all that O'Mill, I can't even say the name of the hotel, paid toward the contract? There's not a specific amount indicated, but they talk about the hotel in Cancun as one of the hotels, and that's the hotel owned by Immobiliaria. So it's clearly one of the hotels that has signed this agreement with Apple. It's clearly one of the hotels that they are hosting trade shows about, one of the hotels where they have bonus programs about, one of the hotels where Occidental has agreed to perform training of their agents, one of the hotels where they've given Apple West the authority for their 400 reservation agents located in four cities, one of which is Elk Grove Village, to reserve. Did you just tell me that Occidental owns Immobiliaria? I didn't say that. I said that a parent company owns all the Occidental hotels, including, I think it's called Occidental Overseas Company. Do they own Immobiliaria? Yes, according to their affidavit. And, again, all the Occidental hotels signed this agreement to promote all those hotels, including the Immobiliaria Hotel in Cancun, with Apple Vacations West in Illinois, which is a contract with an Illinois company. Again, and not only, I went through the different contacts that are not just advertising, the different activities that Apple was conducting on them beyond advertising, but it even refers in that contract to the Apple Vacations website as the exclusive website to be used relative to these solicitations, these bookings, and that website, if you go to that website, it says in the website, that all disputes relative to this contract or to any Apple Vacations shall be litigated in the forms of Illinois or Pennsylvania, which goes not only to having a contract with an Illinois company basis for conferring jurisdiction, but also to the fair warning to the defendant in Immobiliaria and the other Occidental hotels as to whether or not they'll be hailed into court in Illinois. All right, counsel, let's hear from your opponent, and we'll give you some brief rebuttal. Does Occidental own Immobiliaria? I think, no, and I think what I need to do is try to help clarify the relationship of some of the entities and some of the non-entities that we have at issue here. Immobiliaria owns the subject Hotel Mexico. The common name of the Hotel Mexico is Caribbean Villages Cancun, so if you go down there, the name that you see on the sign is Caribbean Villages Cancun, but the entity that owns it is the Mexican company, Immobiliaria, Caribbean Villages Cancun. That is an Occidental-branded property. There is no corporate entity named Occidental Hotels and Resorts. It doesn't exist. It's a brand name just as Holiday Inn is a brand name or Marriott is a brand name or Hyatt is a brand name. Exactly. There is no corporate entity named Occidental Hotels and Resorts. There is no evidence in the record here that there is a company named Occidental Hotels and Resorts that owns all of the ladies in the restaurant. Your opponent says that Occidental and Apple had a contract. How could there be a contract with a company that doesn't exist? Well, if you look at the actual contract itself, the subject matter of the contract is the advertising of the Occidental-branded properties. I think the most important thing is the contract is signed by a gentleman named Yorn Kay. Yorn Kay submitted an affidavit in this case and he was deposed in this case. He is employed by Allegro Resorts Marketing Corporation, which is an entity out of Miami, Florida that does marketing and advertising for the Occidental-branded hotels in the United States. He testified in his deposition that he signed this contract. He is employed by ARMC. ARMC performed on this contract. This is ARMC's contract, the subject matter of which are the Occidental-branded hotels. Now, there is no evidence in this record, including in this proposal and marketing plan, that Inmobiliaria's hotel was actually advertised in Illinois. There's not a single Chicago Tribune advertisement in the record. There's not a reference in the record to any radio advertisements for this property owned by Inmobiliaria. There is zero. The only thing that counsel has to point to is this general proposal and marketing plan that does not even specifically reference the hotel that's owned by Inmobiliaria. Inmobiliaria's name isn't anywhere in this document. It's just a general proposal. Is Caribbean Village Cancun's name anywhere in the document? No, it's not. And with respect to that proposal and marketing plan, counsel has hit on the fact that it was around $800,000 total contribution and that he has postured it as being purposely directed to the state of Illinois. However, on the second page of that marketing proposal, it specifically lists 27 markets that this proposal is intended for. Twenty-seven. Only one of which is in Illinois. That's Chicago. So 26 out of the 27 markets that issue this proposal are outside of Illinois. So while there may be some portion... Why isn't that in and of itself a sufficient contact jurisdictionally? A few reasons, Justice. First of all, Inmobiliaria didn't sign this contract. It's not referenced in this contract. The name of its hotel is not referenced in this contract. And the mere fact that this contract existed, again, there is no evidence in the record that there were actually any advertisements placed with respect to the Caribbean Villages anywhere in Illinois. So while maybe this proposal and marketing plan gave the option of some sort of advertising being made for this Caribbean Villages hotel, there's zero evidence in the record that any advertisement was actually made. Okay. Well, why isn't that position that you are taking inconsistent with the Manson case to which your colleague makes such reference? Sure. Between all the parties of both of our briefs, there are nine Illinois cases that were cited that have to do with someone from Illinois traveling outside of Illinois on vacation or otherwise and injuring themselves while outside of Illinois coming back here to file suit. Out of all nine of those cases, only one, only Manson, found that personal jurisdiction was appropriate based on advertising. All four of the precedents I cited from this first district here, all found, despite the fact that there was advertising, found that that was not sufficient and that usually it was two separate bases. First is that a personal injury cause of action cannot arise out of an advertisement that's placed in Illinois. And second, that advertising in Illinois, as I stated in my brief, is quote, unquote, mere solicitation, and merely soliciting business in the state of Illinois is not enough to subject an out-of-country, let alone out-of-state, defendant to specific jurisdiction. And it goes similar to what, you know, the issue that this court raised in the Cadala case, which I cited too, which is the key issue is are you transacting business in Illinois, which is separate and distinct from are you simply transacting business with a person who happens to reside in Illinois. At first blush may seem to be related or similar concepts, but they're quite different. So the personal jurisdiction test has to do with are you transacting business in Illinois. And the cases here show that the Manson case is the only one that found advertising was enough in this fact scenario. And it was a poorly reasoned decision. The court never even addressed the mere solicitation doctrine, which is a key component of this particular issue. And the court did not actually give any reasoning or analysis about how that court was deviating from all the other precedents. It's a northern district case. That's correct, Justice. It's a northern district case. And that court in that case did not explain how they were deviating from the precedents in finding that a personal injury cause of action could arise out of a mere advertisement in Illinois. And I think it's instructive that the northern district in two subsequent cases that I cited, the Brescia case and the Dresden case, which both were similar fact scenarios, the northern district in those two cases moved away from that Manson case, refused to apply that reasoning. And despite the fact that there were advertisements in those two cases, the northern district said there is no personal jurisdiction under this fact scenario. So that's how the proposal and marketing plan at issue here and the Manson case really don't support personal jurisdiction over in Mobiliaria. Do you think we need to specifically distance ourselves from Manson in arriving at a disposition in this manner? I don't know. Or is it necessary? I don't think it's entirely necessary, Justice, because as I mentioned, Manson is only one out of all the other eight precedents that were cited that follow that train of thought. And by the northern district itself moving away from Manson in Brescia and in Dresden, I think that's notice from the northern district itself that it's not applying the reasoning that was applied in the Manson case. And I think that it's important to note in one of those particular subsequent cases, the Brescia case, that case involved a Mexican resort that had co-op advertising with Apple Vacations in Illinois, and the northern district found that that co-op advertising with Apple Vacations was not enough to assert personal jurisdiction in that the personal injury cause of action did not arise out of the alleged contacts in the state of Illinois. And again, in this particular case, we're even further removed, because in the Brescia case, it was the hotel was actually a contracting partner with Apple Vacations, whereas here, for the reasons that I've stated, in Mobiliaria is not a signatory of this contract. And even if this court applies this proposal and marketing plan against Immobiliaria, it is still mere solicitation, which is not enough. And further than that, there still is zero evidence in the record that advertisements were actually placed anywhere in Illinois. So those are the reasons why the due process clause in concerns cannot be met. The other factors as far as traditional notions of fair play and whether Immobiliaria can be reasonably anticipated to be held into court here, I addressed those issues in the briefs. In Brescia, does it indicate that there are two elements, that first of all that the plaintiff has to be amenable to a service of process, and secondly, that the 14th Amendment due process clause, that the defendant has to be consistent with that? Aren't those the two elements in Brescia? Well, certainly. Are they not, are you saying that they're not met here? Well, the Immobiliaria was served with process in Mexico pursuant to the terms of the Hague Service Convention, which both the United States and Mexico are a party to. But serving Immobiliaria in Mexico pursuant to the Hague Service Convention does not impute personal jurisdiction over Immobiliaria. It's just a method in which to bring Immobiliaria before the court, and at that point in time is when you enter into the constitutional analysis to determine if asserting personal jurisdiction would be appropriate under federal and Illinois due process guidelines as set forth in the case law. So the issue of service of process does not impute or doesn't have any direct relationship to whether a court can assert personal jurisdiction over a defendant. And as one last final point, as mentioned by the United States Supreme Court in the Asahi decision, when a court is dealing with a defendant that is located outside of the United States, the Supreme Court cautioned courts to exercise even greater caution when analyzing the issue of personal jurisdiction. So the issue becomes one that's even more strict when dealing with an out-of-country defendant because of the international economy issues which are at play, rather than someone who may merely be outside the state of Illinois but within the United States. So rather than to rehash any of the other issues in the brief, I think I've tried to set forth and rebut the positions of the plaintiffs that I've set forth with respect to personal jurisdiction here. I'd be happy to answer any other questions the justices may have. Thank you, counsel. Thank you. A short rebuttal. With regard to the issue of the co-op advertising with Apple in the Brescia case, the Brescia case specifically goes through that and says it was a national advertising program with Apple. It was not related to the state in question specifically. And that is a basis of their decision in the Brescia case. We have a completely different situation here. This was targeted at 27 states. I mean, that's half. Absolutely. And the case law doesn't say if the defendant targets your state as well as others, there's no jurisdiction. What the case law says is are there contexts by which this defendant has purposely directed activities at this state from which it derived economic benefit. The contract, all the evidence shows they purposely, all the accidental hotels purposely directed activities at residents of Illinois, and that is why Mr. and Mrs. Polos signed up for an Apple trip and went to an accidental hotel, the Immobiliario. So I don't think that, with all due respect, I don't think that's relevant that there's others, because we're not asking whether there's jurisdiction in those other states. This is one of them, and, in fact, it's the first named one, and they actually used the term a primary target in that contract in their own language. And as far as that contract. Well, what about the fact that he's saying that Occidental never signed the contract? I was just going to talk about that. This contract is signed by Jordan Kay on behalf of Occidental Hotels. It says right on the contract, Jordan Kay is the president of a company that has one client, Occidental Hotels. That's all they do. They're paid by Occidental Hotels. He's a Legro. He's a Legro. He's a Legro. He's president of a Legro. All they do is do work for Occidental Hotels. He signed this contract on behalf of Occidental Hotels, and the contract clearly states in all the language, all the activities they ask Apple West to do are on behalf of the Occidental Hotels. Legro is not getting the money when they book these stays through their contract at Immobiliaria and the other hotels. Occidental is. All the benefits from this contract are for the Occidental Hotels. To come in here and say the Occidental Hotels are not a party to this contract is not supported by the evidence. It's not accurate, and it's not fair. And that's what the case law says when a defendant that's out of state or out of the country tries to delegate their activities in Illinois to some other company and then say, I shouldn't be called to go into that state to defend a suit when clearly they have entered into this agreement, and they are the ones who are deriving the economic benefit from it. They are the ones paying for it. That's Matson. That's Matson. That's Matson. Why is he wrong to suggest that the Northern District has now distanced itself from Matson? Because I can tell you right now, I've got the Brescia case right in front of me. The Brescia case does not say that the Matson case is poorly decided at all. It just distinguishes it on the facts. In fact, it cites to the Matson case and another case similar to it, Hubs International Limited v. Burke Triolo Inc., 121F sub 2nd 1178, saying the combination of advertising through a website that solicits information from users and employing a local Illinois agent was deemed to be enough. And then they talk about Matson and that the agents, the travel agencies that were enabled in Illinois to easily reserve a room and the other activities in terms of advertising by the defendant in the Matson case in Illinois was deemed to be sufficient. Then they go on to distinguish on the facts. Is it your position, is it your client's position that Brescia did or did not follow the logic and the reasoning behind Matson? Absolutely followed the logic. Absolutely. It's the same. It's just that the facts are different. And the facts in this case are different than all of those cases. The counsel mentioned nine Illinois cases. Is there any of those Illinois cases where there's a signed agreement and, again, by Occidental, which is Immobiliaria and the other Occidental hotels, despite their claims, it's clearly that's the case in the evidence, a signed agreement by which they are to conduct Apple, an Illinois company, entering into a partnership agreement with an Illinois company to conduct all these activities targeting Illinois residents. None of the other cases have that. Signed agreement in this level of connection and activities in Illinois in writing, even using the terms because the case law uses the terms, did you purposely direct activities at Illinois? Here they actually use the terms. We're directing activities at Illinois. We're aiming our activities at Illinois. We're using Chicago as a primary target. These are their words. The Brescia case is consistent with the Matson case. Not only do none of the cases cited indicate different than what we're citing the Matson case for, it logically shouldn't be different, the law, because it shouldn't be, a defendant should not be allowed to reach into Illinois, purposely direct its activities at Illinois residents, conduct numerous activities in Illinois through an Apple West or some other company to have people come from Illinois, target those residents to come to their hotel, and then hide behind the fact that it's Apple West that they hired to do this in Illinois and say that's not us, that's Apple West. That's what's not fair, and that's what the Matson case stands for, and that's what I think all the cases should stand for, and I don't think any of them say other than that. Counsel, thank you. Thank you. This matter will be taken under advisement.